**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VERONICA MANZANEREZ-BUSTAMANTE, <br><br> Petitioner, <br><br> v. <br><br> WARDEN, *Adelanto ICE Processing Center, in official capacity*, **et al.,** <br><br> Respondents. | NO. 5:26-cv-02734-KS <br><br> MEMORANDUM AND ORDER RE: PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY UNDER 28 U.S.C. § 2241 |

Before the Court is the Petition for Writ of Habeas Corpus by a Person in Federal Custody Under 28 U.S.C. § 2241 ("Petition") filed by Petitioner Veronica Manzanerez-Bustamante on May 20, 2026. (Dkt. No. 1.) On the same date, Petitioner, who is currently detained in Immigration and Customs Enforcement ("ICE") custody at the Adelanto ICE Processing Center ("Adelanto"), filed a Notice of Motion and Motion for Temporary Restraining Order to Prevent Removal, Prevent Transfer and Release on Bond/Parole ("TRO Application"). (Dkt. No. 3 at 2.) On May 20, 2026, Petitioner voluntarily consented to have a Magistrate Judge conduct all further proceedings in this case, including entry of judgment. (Dkt. Nos. 4. 9.)

On May 28, 2026, Respondents filed a Response to the TRO Application (dkt no. 11), and on May 29, 2026, the Court heard oral argument on Petitioner's Emergency Application

1

for TRO (dkt. no. 12).  On June 2, 2026, the Court DENIED Petitioner's TRO Motion.  (Dkt. No. 13.)  The Court here addresses the merits of the Petition itself.

## PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Mexico who has "resided continuously in the United States since approximately 1995." (Dkt. No. 1 at 3.)  "She is the mother of three United States citizen children and has no criminal history."  (*Id.*)  Petitioner has been detained at Adelanto since November 2025, a total of 235 days, or seven months and 24 days (excluding today), "following immigration proceedings in which she was denied bond on the basis of alleged flight risk."  (*Id.*)  Petitioner maintains that she has remained in prolonged detention at Adelanto despite her extensive family ties within the United States, including her three U.S. citizen children.  (*Id.*)

On or about November 3, 2025, border patrol agents conducting "roving patrol operations" in Ontario, California, observed Petitioner walking near railroad tracks and approached her and questioned her about her citizenship and immigrates status.  (*Id.,* Ex. A at 3.)  Petitioner acknowledged she was a citizen of Mexico and that she was "present in the United States without lawful status." (*Id.*)  Petitioner was arrested and placed into immigration detention on the basis that she was considered a flight risk.  (*Id*. at 4.)  On November 5, 2025, Petitioner was served with a Notice to Appear before the immigration court and placed into removal proceedings. (*Id.*)  On March 13, 2026, Petitioner requested a custody redetermination hearing before Immigration Judge Carlos E. Maury (the "IJ").  The IJ "denied jurisdiction over bond, finding that detention was mandated under INA § 235(b)." (*Id.*, Ex. C)

Petitioner next filed an application for cancellation of removal based on her prolonged residence in the United States, her lack of criminal record, and her significant familial ties, including her three U.S. citizen children.  (*Id.*)  On April 7, 2026, the IJ denied Petitioner's

application for cancellation of removal, noting "respondent admitted the factual allegations of the [Notice to Appear], and the Court sustained the charge of removability.  Based on the respondent's admissions and concession, the Court found the respondent as removable as charged by clear and convincing evidence and directed Mexico as the country for removal, should it become necessary." (*Id.*, Ex. E.)

In denying cancellation of removal, the IJ issued a reasoned six-page order that included a determination at the outset that "the respondent was a credible witness under the totality of the circumstances." (*Id.*, Ex. D at 4.)  The IJ nevertheless concluded that "the respondent's testimony was insufficient in and or itself to find his [sic] evidence persuasive or sufficient to meet the burden of proof or establish any basis for relief." (*Id.*)  After noting that cancellation of removal is a discretionary act available to certain noncitizens, the IJ stated that he had weighed the positive and negative factors in Petitioner's case and concluded Petitioner had not met the eligibility standard for cancellation of removal, and reasoned "that had the respondent established all the eligibility requirements, that the Court would [sic] exercised discretion favorably for the respondent." (*Id.*, Ex D at 5.)

Petitioner has since filed an appeal with the Board of Immigration Appeals ("BIA") and that appeal remains pending. (*Id.* at 4, Ex. F.)

On May 12, 2026, Petitioner received a custody redetermination hearing in which she was again denied bond, with the IJ indicating on a checkbox form, without further discussion, that Petitioner was a "[f]light risk for which no amount of bond can be issued to ameliorate her likelihood to absond [sic]." (*Id.*, Ex. G.)

\\

\\

\\

**PETITIONER'S CLAIM FOR RELIEF**

Petitioner contends that the denial of release from custody violates the Due Process Clause of the Fifth Amendment. (*Id.* at 5.) Petitioner argues that the IJ "failed to meaningfully consider less restrictive alternatives to detention, including electronic monitoring, supervision, reporting requirements, or other conditions capable of ensuring compliance with immigration proceedings." (*Id.*) Petitioner urges that release from custody is warranted here because "Petitioner suffers continuing irreparable harm through the deprivation of liberty." (*Id*. at 4-5.) Petitioner also maintains that the IJ's "custody determination relied primarily on conclusory findings of flight risk without adequate individualized analysis," and the government "did not properly weigh Petitioner's lack of criminal history, long-term residence, family ties, and eligibility for less restrictive alternative detention." (*Id*. at 5.) Petitioner urges that she is entitled to habeas relief because "Respondents have failed to demonstrate by individualized evidence that Petitioner presents a danger to the community or that detention is necessary to ensure [her] appearance at future proceedings." (*Id.*)

Petitioner further argues that she does not present a danger to the public and Respondents have other means "short of incarceration to ensure compliance with future immigration proceedings." (*Id.*)

**RESPONDENTS' ANSWER**

On May 28, 2026, Respondents filed a COMBINED Opposition to Petitioner's TRO Application and Answer to the Petition. (Dkt. No. 11.) Respondents insist that Petitioner is not entitled to emergency relief and that she has received adequate due process in her previous immigration proceedings. (Dkt. No. 11 at 1.) Respondents point out that Petitioner "confirms that she was recently provided with a *Rodriguez* bond hearing where DHS established by clear

and convincing evidence that she was a flight risk." (*Id.*)  On that basis, Respondents maintain that the Petition and the TRO Application should be denied.  (*Id.*)

At the hearing on the TRO Application, counsel for Respondents emphasized that because Petitioner had a *Rodriquez*[1] hearing on March 13, 2026, Petitioner must seek redress for any alleged legal deficiency or error in that hearing through an appeal to the BIA and must exhaust administrative remedies before presenting her case in the district court.  (*Id.* at 6.) Indeed, Respondents urge that "Petitioner fails to demonstrate why the BIA should be bypassed at this procedural juncture."  (*Id.* at 1.)

## LEGAL STANDARDS

### I.    Writ of Habeas Corpus

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); 28 U.S.C. § 2241(c)(3).  "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020).

\\

\\

---

[1] *Rodriguez v. Robbins,* 804 F.3d 1060 (9th Cir. 2015).

5

## II.   Due Process Under the Fifth Amendment

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  *See* U.S. Const., amend. V.  These protections extend to noncitizens present in the United States.  *See, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (internal quotation marks omitted) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings."); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."); *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021) (internal quotation and alterations omitted) ("The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.").  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

The Due Process Clause provides both procedural and substantive protections.  *See, e.g.*, *Regino v. Staley*, 133 F.4th 951, 959 (9th Cir. 2025) (internal quotation omitted) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.").  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the *Mathews* test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under *Matthews*, courts weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 332, 335.

6

"Substantive due process protects individuals from state action that interferes with fundamental rights." *Regino*, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation omitted). To assess whether there has been a violation of a fundamental right, courts begin with "a careful description of the asserted fundamental liberty interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).

With that description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." *Khachatryan v. Blinken*, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation and alterations omitted).

**DISCUSSION**

The Petition presents a single claim for relief: violation of the Fifth Amendment Due Process Clause. (Pet. at 5.) It is undisputed that Petitioner is entitled to the protections of procedural and substantive due process with respect to her immigration detention. *See Trump v. J.G.G.*, 604 U.S. at 673; *Zadvydas*, 533 U.S. at 693; *Hussain*, 985 F.3d at 642. Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981.

Petitioner contends, however, that the May 12 hearing, where the IJ concluded that Petitioner poses a "flight risk," was not sufficiently individualized because there is no record

evidence indicating – or even suggesting – that the IJ gave any individualized consideration to Petitioner's specific circumstances and characteristics. (*Id*.) Petitioner maintains that the IJ failed to consider Petitioner's long residence in the United States, her lack of criminal history, and that she has deep community ties, including three children who are U.S. citizens. (*Id*.) Petitioner also argues that "[t]he denial of release failed to meaningfully consider less restrictive alternatives to detention, including electronic monitoring, supervision, reporting requirements, or other conditional capable of ensuring compliance with immigration proceedings." (*Id*.) Petitioner thus challenges the IJ's substantive conclusions reached after the hearing.

But, as emphasized in the Court's June 2, 2026 Order denying the TRO Application, this Court's ability to review an IJ's detention hearing determination is quite limited by statute. (*See* Dkt. No. 13 at 7-8 (citing 8 U.S.C. § 1226(e).) Indeed, § 1226(e) expressly commits immigration bond determinations to agency discretion, and the Supreme Court has noted that "§ 1226(e) precludes [a noncitizen] from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." (*Id.* (citing *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (cleaned up).)

Given the jurisdictional constraints this Court must observe in the immigration context, the Court cannot find, as a matter of law, that Petitioner has been denied due process under the Fifth Amendment. Indeed, she has received two bond determination hearings, including a reasoned written decision in which the IJ expressly considered and discussed whether Petitioner was eligible for cancellation of removal and concluded she was not. Both proceedings resulted in Petitioner's continued detention despite the IJ expressly finding "that the respondent was a credible witness under the totality of the circumstances." (*Id.*) No doubt, there is a human toll to Petitioner's continued detention as it is undisputed she has deep familial ties in the United States, including three U.S. citizen children, she has no criminal history, and has lived peaceably in the community for more than two decades.

But, to the extent Petitioner contends the IJ's bond determinations were deficient, her remedy is to file an administrative appeal to the BIA, which she has done. (*See* Dkt. No. 1 at 4, Ex. G); s*ee also Marroquin Ambriz v. Barr*, 410 F. Supp.3d 953, 960 (N.D. Cal. 2019); *cf. Martinez v. Scott*, No. 2:25-CV-01538-TSZ-GJL, 2025 WL 2689844, at *5 (W.D. Wash. Aug. 27, 2025), *report and recommendation adopted*, No. C25-1538 TSZ, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025) (dismissing habeas petition for failure to exhaust administrative remedies where detainee argued bond hearing violated due process because the IJ refused to allow witnesses to testify and failed to properly question the petitioner's witnesses). To the extent Petitioner seeks review, or even reversal, of the IJ's bond denial and denial of cancellation of removal, any such relief that seeks to correct the IJ's findings can only be afforded through the BIA. Accordingly, the Petition must be denied.

## CONCLUSION

For the reasons discussed above, the Court DENIES the Petition. Judgment shall be entered dismissing this action with prejudice.

DATE: June 30, 2026

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE

9